IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WARREN MITCHELL,

    Plaintiff,

  v.

CLACKAMAS RIVER WATER, MICHAEL CARDWELL, KENNETH HUMBERSTON, HUGH KALANI, BARBARA KEMPER, KATHERINE KEHOE, CYNDI LEWIS-WOLFRAM, LARRY SOWA, LEE E. MOORE SR., DEAN MARK PHILLIPS, PHILLIPS LAW OFFICE, SPECIAL DISTRICTS ASSOCIATION OF OREGON, AND SPECIAL DISTRICTS INSURANCE SERVICES,

    Defendants.

No. 3:16-cv-00537-HZ

OPINION & ORDER

OPINION & ORDER - 1

James D. Huffman
P.O. Box 973
St. Helens, OR 97051

    Attorney for Plaintiff

Brett Mersereau
The Law Office of Brett Mersereau
851 SW 6th Ave., Suite 1500
Portland, OR 97204

    Attorney for Defendants

HERNÁNDEZ, District Judge:

    Plaintiff Warren Mitchell, a former member of the Board of Commissioners of Clackamas River Water ("CRW"), brings First Amendment retaliation claims under 42 U.S.C. § 1983 and derivative state law claims against thirteen defendants including CRW and several individuals and organizations associated with CRW. Am. Compl. 4–8, ECF No. 5. Defendants allegedly retaliated against Plaintiff after he initiated and contributed to multiple criminal and civil proceedings against CRW board members and employees for fraud, mismanagement of public funds, and election violations. Plaintiff's other claims include: wrongful initiation of civil proceedings; intentional infliction of emotional distress ("IIED"); breach of contract; and restitution of unlawful expenditure of public moneys.

    Defendants move to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In their 12(b)(6) motion, Defendants also move to strike Plaintiff's references to an alleged settlement offer under Rule 408 of the Federal Rules of Evidence and make a special motion to strike the IIED claim under Oregon law.

    The Court grants Defendants' motion to dismiss. As explained below, the Court dismisses Plaintiff's First Amendment retaliation and IIED claims for failure to state a claim.

OPINION & ORDER - 2

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses those as well. Defendants' motion to strike and special motion to strike are denied as moot.

## BACKGROUND

The facts alleged are taken from Plaintiff's Amended Complaint. Plaintiff was elected to the CRW Board of Commissioners on July 1, 2007, and served until June 30, 2009. Am. Compl. 4. When Plaintiff joined the board it consisted of: Barbara Kemper, Cyndi Lewis-Wolfram, Patricia Holloway, and Michael Cardwell. Id. at 11. Two days after his election to the board, Plaintiff was also elected as the Board Treasurer. Id.

The inciting incident of this case occurred between August and October of 2007. Kemper allegedly removed the audio recording of the minutes from a CRW executive sessions meeting and refused to return the recording. Id. Plaintiff, as a private citizen, filed a criminal complaint in Clackamas County for the return of the recordings. Acting as a commissioner, Plaintiff also moved that the CRW board censure Kemper.

In January 2008, Plaintiff, acting as a commissioner, requested CRW emails from July 1, 2007, forward. Id. at 12. Kemper, Lewis-Wolfram, and Cardwell denied the request. Plaintiff later filed a public records request for the same emails as a private citizen with Clackamas County. The district attorney ordered CRW to release the emails. Id. In March 2008, Plaintiff received the emails and gave copies to Holloway and others. Id.

Between April 2008 and April 2011, Plaintiff determined that Lewis-Wolfram and Kemper claimed reimbursements for meetings and events for which they were not entitled. Id. at 11. Kemper and Lewis-Wolfram did not return the money to Clackamas County and Plaintiff

OPINION & ORDER - 3

filed a fraud complaint with the Clackamas County Sheriff's Department and an ethics complaint with the Oregon Government Ethics Commission ("OGEC"). Id.

Between May 2008 and April 2009, Plaintiff discovered from the CRW emails that CRW's Information Manager, Quincy Whitfield, was operating a computer consulting business using CRW's computers during work hours and was transferring surplus computer equipment to his stepson for re-sale. Id. at 12. Plaintiff filed a successful OGEC complaint and Whitfield was fined. Id.

In or about August 2008, a private individual filed a complaint in Clackamas County Circuit Court against Kemper, Lewis-Wolfram, and Cardwell alleging unlawful expenditure of public money. Id. at 12–13. Some of the exhibits to the complaint in that case included excerpts taken from the CRW emails that Plaintiff obtained. Kemper, Lewis-Wolfram, and Cardwell sought legal advice to regain the emails on privilege grounds and were advised that because they had released the records to a member of the public, they could not re-assert privilege. Id. at 13–14.

On February 20, 2009, while Plaintiff's OGEC complaint against Whitfield was pending, CRW demanded that Plaintiff and Holloway return the emails and that none be given to OGEC. Id. at 14. Plaintiff did not return the emails. His term ended on June 30, 2009, and Defendant Katherine Kehoe's term of office began on July 1, 2009. Between November 2010 and February 2012, Plaintiff wrote several letters to the Clackamas County Sherriff's Department and the Clackamas County District Attorney providing additional material to support the outstanding fraud claims against Kemper and Lewis-Wolfram. Id. at 15.

On March 17, 2011, despite having been advised that the emails were no longer privileged, the CRW board convened a special meeting and non-public executive session to vote

OPINION & ORDER - 4

to sue Plaintiff and Holloway for an injunction to obtain the return of the emails. Id. at 15–16. The board approved the action and filed suit against Plaintiff and Holloway alleging that they had violated the responsibilities of their public office by obtaining and retaining the emails. Id. On April 14, 2011, Plaintiff attended a public CRW board meeting and attempted to make a comment on the pending fraud case. The board ordered that he be ejected and security escorted Plaintiff out of the meeting. Id. at 16.

On April 28, 2011, Plaintiff requested legal defense from CRW's insurance provider Defendants Special Districts Association of Oregon and Special Districts Insurance Services ("SDAO/SDIS") to prepare for the hearing regarding CRW's lawsuit for an injunction to return the emails. Id. at 16. After delaying a response for thirty days, SDAO/SDIS offered Plaintiff legal defense after sixty days with the caveat that he repay the legal fees if he was successful. Id. at 16–17.

On July 25, 2011, the Clackamas County Circuit Court denied CRW's request for an injunction for the return of the emails. On the same day or within a few days of that ruling, CRW drafted and obtained a court order prohibiting Plaintiff from "using, disclosing, or otherwise disseminating any records created, maintained, or kept in the ordinary course of plaintiff's business that are now or have been in defendants' possession at any time." Id. at 17. Plaintiff and Holloway appealed the so-called "gag order" in the Oregon Court of Appeals in or about July 2011. SDAO/SDIS refused to pay the legal costs of the appeal. Id. at 17–18.

On January 5, 2012, Plaintiff published a Community Soapbox article in the Portland Tribune criticizing CRW and exposing past convictions of CRW's employees. Id. at 18.

Between March and May of 2013, Plaintiff alleges that the then-existing CRW board (Larry Sowa, Kenneth Humberston, Hugh Kalani, Grafton Sterling), as well as CRW General

Manager Lee Moore Sr., and CRW attorney Phillips received documents and testimony about the inaccuracies of the CRW special district voter list for the upcoming election on May 21, 2013. Id. at 19. The election proceeded unaltered despite the board's awareness of the alleged inaccuracies in the voter list. Sowa, Humberston, and Kalani were elected to the CRW board. On June 26, 2013, Plaintiff filed a Petition of Contest of Election ("election contest") in Clackamas County Circuit Court, challenging the election of Sowa, Humberston, and Kalani on the grounds that illegal votes were cast and the incumbent commissioners had knowledge of the illegality of the election. Id.

On July 5, 2013, CRW filed a motion to intervene as a defendant in the election contest that was granted on October 1, 2013. On November 20, 2013, the trial court found that Plaintiff had failed to satisfy his burden in the election contest. Id. at 21. On March 17, 2014, the court entered a general judgment in favor of the defendants and awarded CRW over $54,000 in attorney fees and costs. Id. at 21–23. On February 24, 2014, CRW's attorney called Plaintiff's counsel and offered to forego the award in exchange for Holloway agreeing to drop her separate pending federal case against CRW.[1]

On March 26, 2014, the Oregon Court of Appeals reversed the "gag order" and on October 22, 2014, it issued a supplemental judgment awarding Plaintiff approximately $11,130 in attorney fees and costs. Id. at 24. On November 26, 2014, Defendants refused to pay the supplemental judgment to allegedly offset the $54,965.31 that Plaintiff owed CRW as the prevailing party in the election contest. Id. at 24–25.

---

[1] The Court takes judicial notice of the case Holloway v. Clackamas River Water, et al., No. 3:13-cv-01787-AC, 2014 WL 6998084 (D. Or. Dec. 12, 2014) (granting defendants' motion to dismiss); 2016 WL 5477548 (D. Or. Sept. 25, 2016) (denying plaintiff's request for leave to amend and dismissing the case with prejudice). Holloway and Plaintiff's claims are based on many of the same facts. Holloway also sued CRW alleging First Amendment retaliation, IIED, and wrongful initiation of a civil proceeding, based in part on CRW's litigation obtaining the "gag order."

OPINION & ORDER - 6

**DISCUSSION**

Plaintiff pleads five claims for relief: First Amendment retaliation under 42 U.S.C. § 1983; wrongful initiation of civil proceedings; IIED; breach of contract; and restitution of unlawful expenditure of public moneys. The Court dismisses all of Plaintiff's claims. First, Plaintiff's § 1983 claim is dismissed as untimely and barred by the *Noerr-Pennington* doctrine. Second, the IIED claim is dismissed for failure to state a claim because Plaintiff fails to allege conduct that is extreme or outrageous. Finally, pursuant to the Court's dismissal of all claims arising under federal law, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

**I.     First Amendment Retaliation Claim Under 42 U.S.C. § 1983**

Plaintiff alleges that Defendants retaliated against him for speaking out on matters of public importance and exercising his right to petition. Am. Compl. 26–28. Specifically, he contends that Defendants initiated "sham" litigation to obtain a "gag order" restraining Plaintiff's free speech and chilling his First Amendment rights. The retaliatory conduct also includes CRW ordering security to escort Plaintiff from public board meeting when he attempted to raise the issue of the outstanding fraud investigation against some CRW board members. He further alleges that SDAO/SDIS retaliated against him by delaying legal representation for his initial defense against the "gag order" lawsuit and by refusing to fund his legal defense on appeal. Plaintiff also alleges that CRW retaliated against him by wrongfully intervening in the election contest that he filed. Finally, Plaintiff alleges that Defendants continued to retaliate against him by refusing to pay the supplemental judgment rendered in his favor when the "gag order" was lifted on appeal.

Nearly all of Plaintiff's allegations occurred outside of the two-year statute of limitations period for 42 U.S.C § 1983 claims. Plaintiff's allegations within the two-year period do not survive Defendants' motion to dismiss because they fail to state a First Amendment retaliation claim or relate to Defendants' litigation conduct immunized by the *Noerr-Pennington* doctrine.

The length of statute of limitations periods is governed by state law and "courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999) (quoting Owens v. Okure, 488 U.S. 235, 250 (1989)). "Section 1983 claims are characterized as personal injury suits for statute of limitations purposes." Davis v. Harvey, 789 F.2d 1332, 1333 (9th Cir.1986). Oregon's statute of limitations for such suits is two years. ORS § 12.110(1); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009).

While state law governs the limitations period, federal law governs when the cause of action accrues. Wallace v. Kato, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). In the Ninth Circuit, a claim accrues "when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas, 567 F.3d at 1109. "Thus, '[a]n action ordinarily accrues on the date of the injury." Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015), cert. denied, (U.S. Oct. 3, 2016) (quoting Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)).

Federal law also applies a continuing violation theory to § 1983 actions. Knock v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). Under this theory, a plaintiff may seek relief for events outside of the limitations period. Id. The Ninth Circuit has repeatedly held, however, "that a mere continuing *impact* from past violations is not actionable." Id. at 1013 (quotation and citation omitted); Abramson v. Univ. of Hawaii, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper

OPINION & ORDER - 8

focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.").

In 2012, the Supreme Court clarified the continuing violation doctrine, explaining:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the [applicable] period after the act occurred. The existence of past acts and the [plaintiff's] prior knowledge of their occurrence, however, does not bar [plaintiffs] from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar [a plaintiff] from using the prior acts as background evidence to support a timely claim.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 869 (9th Cir. 2014) (recognizing that while Morgan applied to Title VII, its holding applies "with equal force" to other laws including § 1983).

Plaintiff lists several allegations to support the argument that his § 1983 claim is timely. Pl. Resp. 22–23, ECF No. 10; Am. Compl. ¶¶ 24, 25, 28, 43–45, 48, 50, 51. All of the acts which occurred outside of the two year § 1983 statute of limitations period are time barred. In other words, Plaintiff's First Amendment retaliation claim cannot be based upon acts which occurred before March 26, 2014 (two years before the date the case was filed). Plaintiff argues that the following allegations occurred within the two-year period:

• May 1, 2014: the date that the Oregon appellate court judgment to lift the "gag order" became final.

• March 31, 2014: The date that CRW filed a petition for attorney fees and costs as the prevailing party in the election contest.

OPINION & ORDER - 9

- November 26, 2014: The date when CRW refused to pay Plaintiff his supplemental judgment awarding fees and costs for the "gag order" litigation.

Pl. Resp. 22–23. The Court will address these three allegations in order below.

### A. "Gag Order" Allegations

The statute of limitations regarding the "gag order" accrued on the date that the order was issued which was outside of the two-year limitations period. Plaintiff argues that the "gag order" constituted a continuing violation of his First Amendment rights that persisted until the appellate court judgment lifting the order became final. However, an action accrues when Plaintiff knew or should have known about his injury. Douglas, 567 F.3d at 1109. In other words, the date of accrual for the action was when the "gag order" was first issued in July 2011. While the gag order had a continuing impact on Plaintiff, he was well aware of the injury on the date the order was issued and had all of the facts necessary to state his claim. Knock, 260 F.3d at 1013. The proper focus for accrual purposes was the time the violation occurred, "not upon the time at which the consequences of the acts became most painful." Abramson, 594 F.2d at 209. Therefore, Plaintiff's § 1983 claim relating to the "gag order" is time-barred and dismissed.

Second, even if Plaintiff's claim regarding the "gag order" was timely, it would still be barred "[b]ecause any order restraining [Plaintiff's] speech was issued by a court and not Defendants." Holloway v. Clackamas River Water et al., No. 3:13-cv-01787-AC, 2016 WL 5429659, at *5 (D. Or. Jul. 5, 2016), F. & R. adopted, 2016 WL 5477548 (D. Or. Sept. 25, 2016) (denying Holloway's request for leave to amend to include a claim regarding the same "gag order" at issue in this case).

### B. Election Contest and Other Conduct

OPINION & ORDER - 10

In addition to Plaintiff's time-barred "gag order" related claim, he argues that "Allegations 25, 38, 42, 44, and 45 all occurred within the two-year statute of limitations, and the tort is ongoing." Pl. Resp. 23. Allegation 25 refers to Plaintiff's ejectment from a CRW board meeting in 2011 and is untimely. The remaining allegations involve Plaintiff's election contest. The only allegation that occurred within the two-year limitation period is Allegation 45, which reads in full, "March 31, 2014: In [the election contest], CRW filed a Petition for Attorney Fees and Costs and Disbursement Pursuant to ORCP 68." Am. Compl. 22.

Plaintiff alleges that filing the election contest was an act of protected speech which formed the basis of the alleged retaliation. Am. Compl. 28. However, the actual retaliatory acts connected with this allegation are unclear. Plaintiff re-alleges the facts of the election contest and claims that Defendants "implemented CRW Policy to inflict financial injury on Plaintiff and to unlawfully intervene to influence the outcome of a nomination or election." Am. Compl. 31.

Plaintiff filed the election contest on June 26, 2013. Am. Compl. 19. The basis of Plaintiff's claims against Moore and other CRW defendants arise out of Moore's expenditure of public funds to file a motion allowing CRW to intervene in the election contest. Am. Compl. 20. The motion to intervene was filed on July 5, 2013 and granted on October, 1 2013. Both dates are outside of the two-year limitations period. Defendants' motion for attorney fees in a case in which they prevailed over Plaintiff is not a discrete violation of Plaintiff's First Amendment rights. Plaintiff knew or should have known all of the facts necessary to state his claim against Defendants for CRW's intervention in the election contest when it intervened.

### C. Refusal to Pay the Supplemental Judgment

Plaintiff alleges that once he obtained a favorable judgment lifting the "gag order" and was awarded attorney fees and costs, Defendants refused to pay the supplemental judgment and

"continue[d] their unconstitutional retaliation." Am. Compl. 24. The Court has difficulty envisioning how the failure to pay a judgment to can be a form of First Amendment retaliation as against CRW. However, Plaintiff has alleged a distinct violation and injury regarding CRW's refusal to pay Plaintiff in retaliation for Plaintiff's exercise of his First Amendment right to speak on a matter of public concern and right to petition. Therefore, Plaintiff's § 1983 claim as to CRW's refusal to pay the supplemental judgment survives the motion to dismiss on the grounds that it is untimely.

However, The Court grants Defendants' motion to dismiss Plaintiff's § 1983 claim regarding the allegation of the failure to pay the supplemental judgment on the grounds that it is immunized by the *Noerr-Pennington* doctrine. The Court applies a heightened pleading standard "[w]here the claim involves the right to petition governmental bodies" including courts. Oregon Nat. Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991). "The *Noerr–Pennington* doctrine shields individuals from, *inter alia*, liability for engaging in litigation." Microsoft Corp. v. Motorola, Inc., 795 F.3d 1024, 1047 (9th Cir. 2015); see also Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1006 (9th Cir. 2008) ("The essence of the *Noerr–Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct."). To satisfy the heightened pleading standard "a complaint must include allegations of the specific activities which bring defendant's conduct into one of the exceptions." Oregon Nat. Res. Council, 944 F.2d at 533 (quotation and citation omitted). "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." Id. Parties may not be subjected to liability for conduct that is "intimately related" or "incidental" to their petitioning activities. Sosa v. DIRECTV, Inc., 437 F.3d 923, 934–35 (9th Cir. 2006)

There is a "sham litigation" exception to the *Noerr-Pennington* doctrine which requires showing that Defendants' actions were "not genuinely aimed at procuring favorable government action." Motorola, 795 F.3d at 1047, n.17. There are three circumstances when litigation may be a sham:

> [F]irst, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court . . . depriv[ing] the litigation of its legitimacy.

Sosa, 437 F.3d at 938 (9th Cir. 2006) (citations and quotations omitted).

It is also worth noting that the Court considered the same "gag order" litigation in Holloway and concluded that the defendants' petitioning conduct was protected under the *Noerr-Pennington* doctrine. Holloway, 2016 WL 5429659, at *5 (D. Or. Jul. 5, 2016) (citing Motorola, 795 F.3d at 1047 n.17), F. & R. adopted, 2016 WL 5477548 (D. Or. Sept. 25, 2016). Here, Defendants' failure to pay the supplemental judgment in the "gag order" litigation is conduct incidentally related to Defendants' petitioning activity protected under *Noerr-Pennington*. See Sosa, 437 F.3d at 934–36 ("[I]n the litigation context, not only petitions sent directly to the court in the course of litigation, but also conduct incidental to the prosecution of the suit is protected by the *Noerr-Pennington* doctrine.") (quotation and citation omitted). In Sosa, the Ninth Circuit took a broad view of *Noer-Pennington* and held that where the "underlying litigation fell within the protection of the Petition Clause, such incidental conduct would also be protected." Id. at 935.

Here, Defendants' refusal to pay the judgment is sufficiently connected with the petitioning conduct to trigger *Noerr-Pennington* protection. Id. (citing Columbia Pictures Indus.,

Inc. v. Prof'l Real Estate Inv'rs, Inc., 944 F.2d 1525, 1528 (9th Cir. 1991), aff'd, 508 U.S. 49 (1993)). Defendants' have allegedly refused to pay Plaintiff's supplemental judgment of $11,130 from the "gag order" litigation to offset the $54,000 award Plaintiff owed CRW for the election contest. Id. Defendants' refusal to pay the supplemental judgment is incidental to their petitioning conduct and therefore immunized under the *Noerr-Pennington* doctrine.

Plaintiff has failed to allege any facts that Defendants' litigation was a sham. The litigation was not objectively baseless because Defendants' prevailed in their initial litigation and obtained the "gag order" which was later overturned on appeal. "Stating a claim under the 'sham' exception to the *Noerr-Pennington* doctrine requires more than a showing of a history of failed appeals." Id. at *5 (citing Oregon Nat. Res. Council, 944 F.2d at 533–34). The fact that the appellate court disagreed with the trial court's decision to issue the "gag order" does not, by itself, turn the litigation into a sham. The second type of sham litigation does not apply because Plaintiff has not alleged that Defendants brought a series of litigation against him for an unlawful purpose. Plaintiff also fails to allege any facts which demonstrate that Defendants made intentional misrepresentations to any court in the course of their litigation. Therefore, the "sham" litigation exception to the *Noerr-Pennington* doctrine is inapplicable to Defendants' protected conduct regarding the "gag order" litigation.

**II.     Intentional Infliction of Emotional Distress Claim**

Plaintiff alleges that the lawsuit to obtain the "gag order," the delayed legal defense representation in that case, and the subsequent refusal to provide legal representation on appeal intentionally inflicted emotional distress. Am. Compl. 37–38.

IIED claims in Oregon have a two-year statute of limitations period. Stupek v. Wyle Laboratories Corp., 327 Or. 433, 436, 963 P.2d 678, 679–80 (1998); ORS 12.110(1). For the

reasons discussed above, all of Defendants' actions which occurred before March 26, 2014, including the "gag order" litigation, are time-barred.

As to the other allegations, they fail to state a claim. To make out a valid IIED claim, Plaintiff must demonstrate: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." Babick v. Oregon Arena Corp., 333 Or. 401, 410–11, 40 P.3d 1059, 1063 (2002) (quoting McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841, 849 (1995)). The conduct alleged must be "extreme and outrageous." McGanty, 321 Or. at 850, 901 P.3d 841 at 850.

Plaintiff has not alleged facts which constitute outrageous conduct that transgress the bounds of what is socially tolerable. Allegedly frivolous lawsuits and the delay or failure to provide Plaintiff with legal representation is not the type of "flagrantly unacceptable" behavior adequate to support a plausible IIED claim. See Holloway, 2014 WL 6998069, at *6–7 (D. Or. Sept. 9, 2014), F. & R. adopted, 2014 WL 6998084, at *8 (D. Or. Dec. 9, 2014). Plaintiff's IIED claims are therefore dismissed.

### III.     Remaining State Law Claims

Plaintiff remaining state law claims include: wrongful initiation of civil proceeding, breach of contract, and restitution of unlawful expenditure of public moneys. At this point, the Court has dismissed all of Plaintiff's federal claims over which it had original jurisdiction. The Court now declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses those claims without prejudice. 28 U.S.C. § 1367(c)(3).

//

### IV. Motions to Strike

The Court has dismissed all of Plaintiff's claims on other grounds and finds that Defendants' motion to strike and special motion to strike are moot and are therefore dismissed.

### CONCLUSION

Defendants' motion to dismiss [6] is granted. Defendants' motion to strike and special motion to strike are denied as moot.

Dated this 31 day of OCTOBER, 2016.

MARCO A. HERNÁNDEZ
United States District Judge